**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Midcontinent Communications, a South Dakota Partnership, | ) ) ) | |
| Plaintiff, | ) ) | **REPORT AND RECOMMENDATION** |
| vs. | ) ) | **RE MOTIONS TO DISMISS** |
| North Dakota Public Service Commission, Kevin Cramer, Tony Clark, and Brian Kalk, in their official capacities as Commissioners of the North Dakota Public Service Commission, | ) ) ) ) ) ) | |
| and | ) ) | Case No. 1:09-cv-017 |
| Missouri Valley Communications, Inc., | ) ) ) | |
| Defendants. | ) | |

_____

Before the court are the motions to dismiss (Doc. Nos. 8 & 9) brought by the defendants.

The motions have been referred to the undersigned for a recommendation.

## I.   BACKGROUND

### A.   The Telecommunications Act of 1996

The Telecommunications Act of 1996, Pub. L. 104-104, 110 Stat. 56 ("1996 Act" or "Act")

"created a new telecommunications regime designed to foster competition in local telephone

markets." Verizon Maryland, Inc. v. Public Service Comm'n of Maryland, 535 U.S. 635, 638 (2002)

("Verizon Maryland").  The principal sections have been codified as part of Title II of the federal

Communications Act of 1934, as amended, at 47 U.S.C. §§ 251 & 252.

With the 1996 Act, Congress sought to take advantage of technological advances that made competition for phone service in local markets possible without duplication of infrastructure.  To end the monopolies of the established local providers and foster competition, Congress imposed a number of obligations on the local providers, who are referred to by the Act as incumbent local exchange carriers ("incumbent LECs"), including the obligation under § 251 to allow competitors ("competing LECs") to interconnect and use the incumbents' networks to provide competing service.  Verizon Maryland, 535 U.S. at 638; AT&T Corp. v. Iowa Utilities Board, 525 U.S. 366, 371 (1999) ("AT&T Corp.").

Under the 1996 Act, a competing LEC can obtain access to the incumbent LEC's network in three ways.  "It can purchase local telephone services at wholesale rates for resale to end users; it can lease elements of the incumbent's network 'on an unbundled basis'; and it can interconnect its own facilities with the incumbent's network." AT&T Corp., 525 U.S. at 371.[1]  When a competing LEC seeks to gain access by one of these three ways, it can seek to negotiate an agreement with the incumbent LEC, which, if consummated, must be submitted to the state commission that regulates local phone service for approval.  If private negotiations fail, either party may petition the state commission to arbitrate the open issues between the carriers.  Id. at 372-373.

A primary exception to the obligations of  incumbent LECs under § 251(c) is the "rural exemption."  Under § 251(f)(1), incumbent LECs who are rural telephone companies are exempt from the obligations under § 251(c) until:  (1) the rural incumbent has received a bona fide request

---

[1]  More specifically, incumbent LECs are obligated under § 251(c) to: (1) negotiate interconnection agreements in good faith; (2) provide interconnection at any technically feasible point; (3) provide network elements on an unbundled basis; (4) provide services at wholesale rates for resale; (5) provide competitors notice of network changes; and (6) allow competitors to collocate their facilities on the incumbent carrier's premises.  In addition, incumbent LECs are required to negotiate the interconnection agreements under the comprehensive framework outlined in § 252, and they must provide the services specified by § 251(c) on just, reasonable, and nondiscriminatory rates under § 252(d).

for interconnection; (2) the requesting carrier has asked the governing state commission to terminate the rural exemption; and (3) the state commission, after conducting an inquiry, has determined the requested interconnection is not unduly economically burdensome, is technically feasible, and is consistent with the provisions of § 254 regarding universal service.

There is another narrower exception to the obligations imposed under § 251(c), which applies as well to obligations imposed by subsection (b), and that is the suspension and modification provisions of § 251(f)(2). Under § 251(f)(2), an incumbent LEC with fewer than two percent of the subscriber lines installed nationwide may petition the state commission for a suspension or modification of one or more of the individual obligations imposed under subsections (b) or (c) of § 251. The state commission is empowered to grant the suspension or modification, but only for the duration it determines that the suspension or modification is "(A) necessary - (i) to avoid a significant adverse impact on users of telecommunications services generally; (ii) to avoid imposing a requirement that is economically unduly burdensome; or (iii) to avoid imposing a requirement that is technically infeasible; and (B) is consistent with the public interest, convenience, and necessity." 47 U.S.C. § 251(f)(2).

**B.** **The disputes giving rise to this case**

This case arises out of disputes between plaintiff Midcontinent Communications ("Midcontinent") and defendant Missouri Valley Communications, Inc. ("Missouri Valley"). Missouri Valley, the incumbent LEC, invoked the rural exemption to deny Midcontinent, the competing LEC, its request for an interconnection to use Missouri Valley's network to provide "facilities-based" competing phone service in the Williston, North Dakota, market (the "Williston Exchange").

3

The complaint alleges that Missouri Valley is the third company to provide telephone services to the Williston Exchange as an incumbent.  According to the complaint, US West (now Qwest) was the original incumbent.  It sold the facilities to Citizens Communications, who later sold the facilities to Missouri Valley's parent company, Nemont, a Montana telephone company.  According to the complaint, Nemont formed Missouri Valley for the sole purpose of owning and operating the facilities for the Williston Exchange.

After acquiring the facilities, Missouri Valley sought approval from the North Dakota Public Service Commission ("PSC") to serve the Williston Exchange. The complaint alleges that as part of this process, Missouri Valley affirmatively represented that it would honor the existing interconnection agreements, which included a prior agreement between Midcontinent and  Citizens Communications.  Midcontinent claims the purchase of the facilities subject to the existing interconnection agreements as well as the alleged promise to the PSC to continue the agreements amounted to a waiver by Missouri Valley of the rural exemption.

The complaint alleges that Missouri Valley later sent a letter to Midcontinent purporting to terminate the interconnection agreement.  This allegedly resulted in the two parties renegotiating a part of the agreement to require Missouri Valley to provide telecommunication services to Midcontinent for resale pursuant to § 251(c)(4) of the Act.  Midcontinent alleges that Missouri Valley never claimed it was exempt from its obligations under § 251(c) by virtue of the rural exemption during this renegotiation and that is also constituted a waiver of the exemption.

According to the complaint, Midcontinent later decided it wanted to change its service model for the Williston Exchange from reselling Missouri Valley's services to selling its own and using Missouri Valley's network through a "facilities-based" interconnection to provide the services.  On

November 14, 2007, Midcontinent made a formal request for a facilities-based interconnection. Missouri Valley rejected the request, invoking the rural exemption.

### C.    The state commission proceedings

On February 8, 2008, Midcontinent commenced a proceeding before the PSC seeking a determination that Missouri Valley had waived its rural exemption, or, in the alternative, that Missouri Valley's rural exemption should be terminated.  In response, on April 9, 2008, Missouri Valley filed a separate application for suspension under § 251(f)(2) of any modification of its duties that would result if the PSC rendered a decision terminating the rural exemption under § 251(f)(1). (Doc. No. 10-6, pp. 3-4).

The PSC consolidated the two proceedings and conducted a hearing on July 9-10, 2008.  On October 8, 2008, the PSC issued its findings, conclusions, and order, denying Midcontinent's request for termination of Missouri Valley's rural exemption.  In a 2-1 decision with Commissioner Wefald voting no, the PSC concluded that Midcontinent had failed to prove that its request for interconnection was (1) not unduly economically burdensome and (2) consistent with the provisions of § 254 regarding universal service.  (Doc. No. 10-6, p. 12)  Given these conclusions, the PSC determined it was not necessary to address the issue of technical feasibility although it appears this was not contested by Missouri Valley. (Doc. No. 10-6, pp. 10 & 12).  Likewise, it also determined that Missouri Valley's petition for suspension of interconnection requirements was moot given the conclusion that the rural exemption was not terminated. (Doc. No. 10-6, p. 12).

In a dissent, Commissioner Wefald stated she disagreed with a number of the findings regarding the economic impact that would be imposed upon Missouri Valley if the rural exemption was terminated.  She stated her preference was to terminate the rural exemption and require a

suspension until such time as Midcontinent met the requirements of a designated eligible communications carrier, which she stated would then require Midcontinent to serve the entire service area and not just the City of Williston, the same as Missouri Valley. (Doc. No. 10-6, p. 13).

Midcontinent alleges in its complaint that the PSC did not address its waiver arguments.  At least in terms of the PSC's findings, conclusions, and order, this contention appears to be correct. (Doc. No. 10-6).

Midcontinent filed a petition for reconsideration and rehearing, which was denied by the PSC on December 3, 2008.  Midcontinent did not appeal the PSC's decision to the state district court. Instead, it filed this action.

### D.    Midcontinent's complaint in this action

Midcontinent's complaint (Doc. No. 1) names Missouri Valley, the PSC, and each of the three PSC Commissioners in their official capacities as defendants. Midcontinent claims that the PSC misapplied federal law in continuing Missouri Valley's rural exemption and seeks declaratory and injunctive relief that would have the effect of setting aside the PSC's decision and also requiring Missouri Valley to negotiate a facilities-based interconnection with Midcontinent.  Midcontinent also seeks damages from Missouri Valley  as a consequence of it not honoring Midcontinent's request for the facilities-based interconnection.

## II.   <u>DISCUSSION</u>

### A.    Introduction

Missouri Valley and the state defendants have separately moved to dismiss this action for lack of subject matter jurisdiction and for failure to state a claim for which relief can be granted.  Before turning to the specifics of the motions, it is helpful to understand the position of the defendants generally.

Defendants are of the belief that this action is an "untenable collateral attack" upon the PSC's decision continuing the rural exemption.  They claim that traditional rules of comity and federal versus state court jurisdiction required Midcontinent to seek review in the state courts  if it was dissatisfied with the PSC's decision, and that the only permissible path for federal court review would have been an appeal to the United States Supreme Court after exhausting available state court appeals and then only to correct errors of federal law committed by the state courts.

In making this argument, defendants acknowledge that the 1996 Act alters what they contend is the traditional path for review of state commission decisions by expressly providing for earlier federal court involvement with the enactment of § 252(e)(6), which reads, in relevant part, as follows:

> In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section.

Defendants argue, however, that § 252(e)(6) by its terms is limited to certain state commission decisions under § 252 and that the absence of express language providing for similar review of state commission decisions outside the scope of § 252(e)(6) is evidence that Congress intended that the traditional rules governing review of state commission decisions would apply to other decisions, including those made under § 251 of the Act and specifically here, the decision of the PSC to continue Missouri Valley's rural exemption.

**B.**     **Defendants' motions to dismiss  for lack of subject matter jurisdiction**

In its complaint, Midcontinent claims that the PSC misapplied the 1996 Act when it upheld Missouri Valley's rural exemption. Specifically, it claims that the PSC:  (1) violated § 251(f)(1)(A) by failing to conclude that Missouri Valley had waived its rural exemption; (2) erroneously

concluded that  forced interconnection would be "unduly economically burdensome" to Missouri Valley within the meaning of § 251(f)(1)(A); (3) erroneously concluded that the rural exemption would negatively impact universal service under § 254; and (4) erroneously concluded that "safety valve" financing would be unavailable to Missouri Valley under 47 C.F.R. § 54.305.

Midcontinent argues that these allegations are sufficient to create federal questions for purposes of jurisdiction under 28 U.S.C. § 1331.  Midcontinent, as the plaintiff, bears the burden of establishing the court's jurisdiction.  E.g., Jones v. Gale, 470 F.3d 1261, 1265 (8th Cir.2006).

In Verizon Maryland, supra, the Supreme Court addressed whether the federal district court below had jurisdiction to consider a claim that the state commission misapplied the 1996 Act when it required an incumbent LEC to pay reciprocal compensation to a competing LEC for telephone calls made by the incumbent's subscribers to internet service providers.  One of the arguments made by the parties for jurisdiction was that it was conferred by the provisions of § 252(e)(6) quoted earlier.

The Court declined to rule on whether § 252(e)(6) conferred jurisdiction in that case, noting that the state commission's decision involved neither the approval nor disapproval of a negotiated agreement or a statement of available terms as arguably required by the express language of § 252(e)(6).  Verizon Maryland, 535 U.S. at 641-642.  Instead, the Court concluded that the claim that the state commission's decision was contrary to the 1996 Act (including an  FCC ruling made pursuant to it) created a federal question sufficient to invoke jurisdiction under 28 U.S.C. § 1331, regardless of whether § 252(e)(6) also conferred jurisdiction.  Id. at 641-644.

Despite the breadth of the Court's decision in Verizon Maryland, defendants argue that the case is distinguishable and that federal question jurisdiction is lacking.  They claim that § 1331 alone is not enough to confer jurisdiction and that the federal statute pursuant to which suit is brought must also create a private cause of action.  With this as a premise, they argue that Verizon Maryland

8

simply confirmed federal question jurisdiction over matters for which § 252(e)(6) created a private cause of action and that this case is different, given that the PSC's decision was made pursuant to § 251 and there is no language in that section creating a private cause of action comparable to § 252(e)(6). Also, along the same lines, defendants make the argument mentioned earlier that Congress must have intended that the traditional path of review of state commission decisions through the state court systems be followed for challenges that are outside the scope of § 252(e)(6), including the challenge here to the decision applying the rural exemption. The problem with all of these arguments, however, is that they appear to have been rejected by the Supreme Court in <u>Verizon Maryland</u> and, more importantly for this court, by the Eighth Circuit.

Before turning to the Supreme Court's decision in <u>Verizon Maryland</u>, it is helpful to consider what the Court had to say earlier in <u>AT&T Corp.</u>, <u>supra</u>, about the 1996 Act's federalization of the rules governing local phone service and the altered role of state commissions as a consequence. After noting the federal authority of the FCC to carry out the "'provisions of the Act,' including §§ 251 and 252," the Court stated the following in a footnote:

> But the question in these cases is not whether the Federal Government has taken the regulation of local telecommunications competition away from the States. With regard to the matters addressed by the 1996 Act, it unquestionably has. The question is whether the state commissions' participation in the administration of the new *federal* regime is to be guided by federal-agency regulations. If there is any "presumption" applicable to this question, it should arise from the fact that a federal program administered by 50 independent state agencies is surpassing strange. The appeals by both Justice THOMAS and Justice BREYER to what might loosely be called "States' rights" are most peculiar, *since there is no doubt, even under their view, that if the federal courts believe a state commission is not regulating in accordance with federal policy they may bring it to heel. This is, at bottom, a debate not about whether the States will be allowed to do their own thing, but about whether it will be the FCC or the federal courts that draw the lines to which they must hew.* To be sure, the FCC's lines can be even more restrictive than those drawn by the courts-but it is hard to spark a passionate "States' rights" debate over that detail.

AT&T Corp., 525 U.S. at 378 & n.8 (emphasis added).  Without explicitly so stating, it is apparent the justices were of the view in AT&T Corp. that the federal courts generally, and not just the Supreme Court, would have broad  authority to address errors of federal law by state commissions in carrying out the requirements of the 1996 Act.

It was within this context that the Court concluded later in Verizon Maryland that the 1996 Act's silence with respect to federal court review beyond that expressly provided for in § 252(e)(6) would not be construed as an intent to preclude federal question jurisdiction over other matters.  The Court stated the following, which notably also rejected defendants' private-cause-of-action argument:

> The Commission contends that since the Act does not create a private cause of action to challenge the Commission's order, there is no jurisdiction to entertain such a suit. We need express no opinion on the premise of this argument. "It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). As we have said, "the district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another,' unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.' " Ibid. (citations omitted). Here, resolution of Verizon's claim turns on whether the Act, or an FCC ruling issued thereunder, precludes the Commission from ordering payment of reciprocal compensation, and there is no suggestion that Verizon's claim is " 'immaterial' " or " 'wholly insubstantial and frivolous.' " Ibid.
> Verizon's claim thus falls within 28 U.S.C. § 1331's general grant of jurisdiction, and contrary to the Fourth Circuit's conclusion, nothing in 47 U.S.C. § 252(e)(6) purports to strip this jurisdiction. Section 252(e)(6) provides for federal review of an agreement when a state commission "makes a determination under [§ 252]." If this does not include (as WorldCom, Verizon, and the United States claim it does) the interpretation or enforcement of an interconnection agreement, then § 252(e)(6) merely makes some other actions by state commissions reviewable in federal court. This is not enough to eliminate jurisdiction under § 1331. Although the situation is not precisely parallel (in that here the elimination of federal district-court review would not amount to the elimination of all review), we think what we said in Abbott Laboratories v. Gardner, 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), is nonetheless apt: "The mere fact that some acts are made reviewable should not suffice to support an implication of exclusion as to others." (Internal quotation

marks and citation omitted.) And here there is nothing more than that mere fact. Section 252 does not establish a distinctive review mechanism for the commission actions that it covers (the mechanism is the same as § 1331: district-court review), and it does not distinctively limit the substantive relief available. Cf. United States v. Fausto, 484 U.S. 439, 448-449, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). Indeed, it does not even mention subject-matter jurisdiction, but reads like the conferral of a private right of action ("[A]ny party aggrieved by such determination may bring an action in an appropriate Federal district court," § 252(e)(6)). Cf. Steel Co., supra, at 90-91, 118 S.Ct. 1003 (even a statutory provision that uses the word "jurisdiction" may not relate to "subject-matter jurisdiction"); see also Davis v. Passman, 442 U.S. 228, 239, n. 18, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

And finally, none of the other provisions of the Act evince any intent to preclude federal review of a commission determination. If anything, they reinforce the conclusion that § 252(e)(6)'s silence on the subject leaves the jurisdictional grant of § 1331 untouched. For where otherwise applicable jurisdiction was meant to be excluded, it was excluded expressly. Section 252(e)(4) provides: "No State court shall have jurisdiction to review the action of a State commission in approving or rejecting an agreement under this section." In sum, nothing in the Act displays any intent to withdraw federal jurisdiction under § 1331; we will not presume that the statute means what it neither says nor fairly implies.

Verizon Maryland, 535 U.S. at 642-644 (footnotes omitted).

Further, the Court in Verizon Maryland also noted that the Rooker-Feldman doctrine does

not apply to state commission decisions, stating:

The Commission also suggests that the Rooker-Feldman doctrine precludes a federal district court from exercising jurisdiction over Verizon's claim. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). The Rooker-Feldman doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to this Court, see § 1257(a). The doctrine has no application to judicial review of executive action, including determinations made by a state administrative agency.

Id. at 644 n.3. This moots the defendants' more general arguments regarding the appropriate forum

for review of state commission decisions.

Given the foregoing, it is not surprising that the Eighth Circuit has concluded that federal

question jurisdiction under § 1331 is not limited to state commission decisions within the purview

11

of  § 252(e)(6).  In deciding a dispute arising out of the provisions of § 251, the Eighth Circuit in

Iowa Network Services, Inc. v. Qwest Corp., 363 F.3d 683 (8th Cir. 2004) discussed Verizon

Maryland's conclusions regarding § 1331 jurisdiction and stated the following:

> Federal courts have the ultimate power to interpret provisions of the 1996 Act, including whether § 251(b)(5)'s reciprocal compensation requirement applies to the wireless traffic at issue here, even though this case is not brought within the context of a § 252(e)(6) proceeding. See GTE North, Inc. v. Strand, 209 F.3d 909, 916-17 (6th Cir.), cert. denied, 531 U.S. 957, 121 S.Ct. 380, 148 L.Ed.2d 293 (2000). In GTE North, during the pendency of a § 252(b) arbitration proceeding involving GTE as the ILEC, the Michigan Public Service Commission initiated state administrative proceedings against GTE and other ILECs to establish general terms of interconnection. Within that administrative proceeding, the state commission ordered GTE to publish tariffs in which GTE would offer to sell its network elements at rates predetermined by the state commission. GTE appealed that order, which was affirmed by the Michigan Court of Appeals. GTE then sued the state commission in federal court, alleging that the state commission violated federal law in ordering GTE to publish the tariff. The district court dismissed for lack of jurisdiction, finding that § 252(e)(6) precluded federal review until the state commission made a determination either approving or rejecting an interconnection agreement pursuant to § 252. The Sixth Circuit reversed, holding that the district court had jurisdiction under 28 U.S.C. § 1331 to review the state commission's order that was not part of a 47 U.S.C. § 252 interconnection proceeding. Id. at 915-16. To preclude federal court review of a non-§ 252 order on the basis that the order would eventually make its way into a reviewable interconnection agreement would circumvent Congress's decision to establish federal procedures for negotiating interconnection rights and to concentrate final judicial review of interconnection agreements in federal courts. Id. at 918. The court held "that federal review is available under § 1331 to determine whether state commission orders violate federal law except in cases in which the challenged regulatory action is clearly an interlocutory order arising out of § 252 proceedings." Id. at 919.

363 F.3d at 692-693; see also Rural Iowa Independent Telephone Association v. Iowa Utilities

Board, 362 F.3d 1027, 1030 (8th Cir. 2004) (characterizing Verizon Maryland as "recognizing a

district court's jurisdiction under 28 U.S.C. § 1331 to address an action challenging a state

administrative agency's interpretation of the Telecommunications Act of 1996").

Also, it is not surprising that defendants have been unable to cite one case post Verizon

Maryland which has concluded that federal district court review of state commission decisions for

misapplication of federal law is limited to matters within the purview of § 252(e)(6).  In fact, in the

only two cases cited by the parties that involved a state commission decision with respect to the rural

exemption, the federal district court concluded there was jurisdiction under § 1331 in Consolidated Communications of Fort Bend Company v. Public Utility Commission of Texas, 497 F. Supp. 2d 836, 838 (W.D. Tex. 2007), and, in Wireless World, L.L.C. v. Virgin Islands Pub. Serv. Comm'n, 2008 WL 5635072 (D.V.I. February 28, 2008), the jurisdiction of the federal district court was assumed.

Finally, apart from the argument that there is no basis for federal question jurisdiction, defendants argue that the substance of Midcontinent's claims do not involve federal questions, but rather are limited to disputes over the PSC's findings of fact. However, that simply is not the case, as noted earlier. For pleading purposes, Midcontinent has pled one or more federal questions sufficient to provide for § 1331 jurisdiction. Whether these claims have any validity is, of course, a matter to be determined later.

In conclusion, Midcontinent has carried its burden of proving there is federal question jurisdiction over the claims for declaratory and injunctive relief to the extent that they allege that the PSC misapplied the 1996 Act and regulations promulgated pursuant thereto. No claim for damages is made against the state defendants and Missouri Valley in its briefing did not separately address the claim for damages, except obliquely and only in the context of it being an unauthorized means of obtaining review of the PSC's decision. Consequently, the present motions to dismiss for lack of subject matter jurisdiction should be denied.[2]

_____

[2] Midcontinent's complaint also alleges diversity jurisdiction. Given the conclusion that there is federal question jurisdiction for at least the claims for injunctive and declaratory relief, whether there is also diversity jurisdiction need not now be decided. However, diversity jurisdiction is doubtful regardless of the claims being made given: (1) the requirement of complete diversity over all parties, e.g., Exxon Mobile Corp. v. Allapattah Services, Inc., 545 U.S. 546, 553 (2005); Strawbridge v. Curtiss, 3 Cranch 267, 2 L.Ed. 435 (1806); (2) states are not "citizens" for purposes of § 1332 and their presence destroys diversity, e.g., Moor v. County of Alameda, 411 U.S. 693, 717-721 (1973); In re Katrina Canal Litigation Breaches, 524 F.3d 700, 706 & n. 17 (5th Cir.2008); University of South Alabama v. American Tobacco Company, 168 F.3d 405, 411-412 (11th Cir.1999); (3) a suit against state officials in their official capacities is considered to be a suit against the state for diversity jurisdiction purposes, e.g., State Highway Commission of Wyoming v. Utah

### C.    Defendants' motions to dismiss for failure to state a claim

The sole grounds briefed by the defendants in support of their motion to dismiss for failure to state a claim is their argument that the defendants' claims for declaratory and injunctive relief are barred by the doctrine of administrative res judicata, given that Midcontinent did not appeal the decision to the state courts.  Consequently, what follows will be confined to that argument.[3]

Federal district courts are obligated by 28 U.S.C. § 1738 to give full faith and credit to state judicial proceedings, but the Supreme Court has held that this does not extend to unreviewed state administrative determinations.  Astoria Federal S. & L. Ass'n v. Solimino, 501 U.S. 104, 109 (1991) ("Astoria"); University of Tennessee v. Eliot, 478 U.S. 794 (1986).  Nevertheless, the Court has applied common law rules of preclusion to unreviewed state administrative decisions that are judicial in nature, except when Congress has evinced an intent to the contrary.  Astoria, 501 U.S. at 107-114; University of Tennessee, 478 U.S. at 794-799.

These general principles are not in dispute.  Rather, the defendants' argument in support of their motions to dismiss for failure to state a claim is that the common law rules of claim preclusion

---

Construction Company, 278 U.S. 194, 198-200 (1929); Nuclear Engineering Co. v. Scott, 660 F.2d 241, 250 (7th Cir.1981); and (4) the PSC Commissioners in this case are State of North Dakota officials and are not an agency separate and apart from the State, see N.D. Const. Art V, § 2.

Midcontinent in its response brief claims other statutes as conferring subject matter jurisdiction with respect to its claim for damages in addition to §§ 1331 and 1332, but none of these statutes were pled in its complaint as conferring jurisdiction.  That being said, it appears the real questions with respect to the claim for damages are likely not one of jurisdiction if the court has federal question jurisdiction over the claims for declaratory and injunctive relief, given the court's supplemental jurisdiction under 28 U.S.C. § 1367 if federal question jurisdiction is lacking for the claim for damages.  Rather, the more substantial questions appear to be whether there exits a private cause of action for damages in this context and whether there can be any claim for damages absent the PSC terminating the rural exemption.  These points, however, were not addressed in the briefing with respect to either motion to dismiss.

[3] It appears that Missouri Valley in its reply brief concedes that administrative res judicata does not apply so long as Midcontinent has conceded it is not seeking a trial de novo on the issues decided by the PSC and seeks only review of the PSC's decision for errors of federal law based on the existing administrative record.  While this appears to be the case -at least for most of the issues, Midcontinent was not entitled to make a further response to Missouri Valley's reply brief.  Further, the state defendants have not made a similar concession.  Consequently, the issue of whether administrative res judicata bars the claims for injunctive and declaratory relief is addressed.

should apply to state commission decisions under § 251, including the PSC's decision here, because Congress has not expressed an intent to the contrary.  Again, they argue that the express provisions for federal court review in § 252(e)(6) is evidence that  Congress did not intend that the common law rules of administrative claim preclusion be abrogated beyond what might be provided for by that section.

In Astoria, the Supreme Court discussed whether the intent on the part of Congress not to apply common law rules of preclusion to administrative agency decisions must be express or whether it can be implied.  The Court stated it was the latter given that the doctrine of administrative preclusion does not "represent independent values of such magnitude and constancy as to justify the protection of a clear-statement rule." Id. at 109. The court also observed that, while administrative preclusion is "favored as a matter of general policy, its suitability may vary according to the specific context of the rights at stake, the power of the agency, and the relative adequacy of the agency procedures." Id. at 109-110.

Based on what the Supreme Court has said about the purpose and structure of the 1996 Act in Verizon Maryland and AT&T, Corp., there is no reason to believe it would conclude that Congress intended that the common law rules of administrative preclusion would apply to state commission decisions under the Act for which the federal courts have subject matter jurisdiction to review for misapplication of federal law under § 1331, including those outside the scope of § 252(e)(6). Moreover, the Eighth Circuit appears to have already ruled on the issue.

In Iowa Network Services, the Eighth Circuit  rejected an argument for administrative claim preclusion in a case that involved a state commission decision addressing whether the reciprocal compensation requirements under § 251(b)(5) applied to certain wireless traffic.  The court stated, in relevant part, the following:

In the interpretation of a federal statute, the question of whether a state administrative agency's decision should be given preclusive effect is "not whether administrative estoppel is wise but whether it is intended by the legislature." Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 108, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). The Court held that the Age Discrimination in Employment Act's (ADEA) "filing requirements make clear that collateral estoppel is not to apply," id. at 110-11, where the ADEA requires a petitioner to exhaust state administrative remedies, if available, before seeking redress in federal court, id. at 111, 111 S.Ct. 2166 (citing 29 U.S.C. § 633(b)). That scheme "plainly assume[s] the possibility of federal consideration after state agencies have finished theirs." Id.

The Court began with the premise that "where a common-law principle is well established, as are the rules of preclusion, the courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." Id. at 108 (internal quotation marks and citations omitted). Stated another way, "common law doctrines [of res judicata and issue preclusion] ... are trumped by the Supremacy Clause if the effect of the state court judgment or decree [or administrative ruling] is to restrain the exercise of the United States' sovereign power by imposing requirements that are contrary to important and established federal policy." Arapahoe County Pub. Airport Auth. v. FAA, 242 F.3d 1213, 1219 (10th Cir.) (holding that FAA was not precluded from reviewing ban imposed by airport authority for compliance with federal law even though state supreme court had previously upheld ban, where federal concerns were clearly preeminent in field of aviation regulation), cert. denied, 534 U.S. 1064, 122 S.Ct. 664, 151 L.Ed.2d 578 (2001). Thus, the Astoria rule prevents application of res judicata in this case if Congress so intended within the context of the Telecommunications Act of 1996, 47 U.S.C. §§ 151-615b.

Our review of the 1996 Act convinces us that Congress intended to supplant the common law principles of claim preclusion when it enacted the 1996 Act, at least with respect to the issues here involved. It is worth repeating that the issue determined by the IUB was that the intraMTA traffic between the CMRS providers and wireline ILECs, using Qwest's and INS's transmission facilities, involved local traffic rather than long-distance toll service, and as such, reciprocal compensation under § 251(b)(5) rather than tariffed access charges applied to the traffic.

363 F.3d at 689-690.

And, while Iowa Network Services did not involve the rural exemption, there is no reason to believe the Eighth Circuit would reach a different conclusion with respect to it since the state commission decision in Iowa Network Services involved a matter arising under § 251 and outside the purview of § 252(e)(6).  Further, given that the primary objective of the 1996 Act is to provide for competition in local telephone markets through forced interconnections and a sharing of facilities,

it is difficult to believe the Eighth Circuit, after concluding that Congress intended there be federal court review over a matter such as reciprocal compensation under § 251(b)(5), would come to a different conclusion with respect to a decision affecting whether the interconnection and sharing of facilities would be permitted at all.

In conclusion, Midcontinent's claims for injunctive and declaratory relief are not totally barred by administrative res judicata.   Consequently, defendants' motion to dismiss for failure to state a claim based on this grounds should be dismissed.

## III.     RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that the defendants' motions to dismiss (Doc. Nos. 8 & 19) be **DENIED**.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.  Parties may incorporate by reference any arguments previously made.

Dated this 30th day of September, 2009.


                                        /s/  Charles S.  Miller, Jr.
                                        Charles S.  Miller, Jr.
                                        United States Magistrate Judge